# CASES

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—AUGUST TERM, 1890.

## WILLIAM H. HERDMAN ET AL.
## v.
## SAMUEL D. COOPER, SHERIFF, ET AL.

*Homestead—Real Property—Sale of under Execution—Irregularities of—Bill to Set Aside—Practice.*

1. A husband can have a homestead in his wife's property to the same extent as if the title to the property was in himself; he can have but one homestead. If it attaches to property owned by the wife, he can not have another in property, the title to which is in himself.

2. Where a debtor resides upon a lot worth more than $1,000, to it alone his homestead attaches, although other lots are within the same inclosure and used for family purposes. The dwelling house is the foundation fact upon which the homestead must stand.

3. Upon a bill filed to set aside the sale of a lot upon the ground that complainants were entitled to a homestead therein, and also on account of the alleged irregularity of such sale, this court holds that the fact that a person named bid off said lot at the sale, under a certain execution, did not make the same complete as to him, in the absence of payment to the sheriff; that upon failure to do so, it was the duty of the sheriff to readvertise the property for sale; that his return of the execution, unsatisfied, to the office of the clerk, did not relieve him from his duty to hold the same until he had disposed of the levy by a sale; that in such case should the property fail to bring upon the resale the amount offered upon the first sale thereof; the first purchaser would be responsible for the difference; and declines to interfere with the decree for the defendants.

(330)

Herdman v. Cooper.

[Opinion filed February 2, 1891.]

APPEAL from the Circuit Court of Jefferson County; the Hon. WILLIAM C. JONES, Judge, presiding.

William H. Herdman and his wife were 'married in 1850. At that time Mrs. Herdman was owner, as heir of her father, of an undivided third of lot 3, block 18, in Mount Vernon, and subsequently she became the owner of another undivided third of the lot, and her husband the owner of the remaining third. They moved into the house on the lot in 1851 and have continued to occupy it as a homestead ever since. In 1854 William H. Herdman became the owner of two-thirds of lot 2 in the same block, and later on the owner of all the lot except one-eighteenth. When Herdman became the owner of the two-thirds of lot 2, he took possession of the lot. The lot was used by his family as a fruit and vegetable garden, and subsequently he erected a barn, a part of which, a cow shed, was on lot 3 and the remainder on lot 2. The value of lot 3 with improvements was variously estimated, but the weight of the testimony shows that it was worth more than $1,000. In July, 1866, the Herdmans mortgaged lot 2 to Samuel H. Watson, by which the homestead right of the Herdmans, if any, was released. This mortgage was foreclosed and the premises sold February 13, 1887. A. Rightnowar recovered a judgment against Herdman at May term, 1888, of the Circuit Court, and redeemed from the foreclosure sale, and the property was again sold August 11, 1888, for the amount of the redemption and the Rightnowar judgment and costs. Appellee McLaughlin held a judgment against Herdman on which he sued out an execution, and redeemed from the sale under the Rightnowar execution, paying to the sheriff the amount necessary to redeem from the Rightnowar sale, and a levy was made on lot 2 under the McLaughlin execution, and the property was again advertised for sale under the McLaughlin execution, and at such sale, September 15, 1888, the property was struck off to McLaughlin for the sum of $307. The sheriff recites in his return on the execution, that after waiting eight days for McLaughlin to complete

his purchase, he made out and presented to McLaughlin a certificate of purchase, and he still refusing to complete the same, he returned the execution not satisfied.

Afterward, about March 1, 1889, the sheriff took this execution from the clerk's office and readvertised the property under the levy made the previous August, and again sold the property to McLaughlin for $797.76, being the full amount of the redemption paid by McLaughlin and the amount of his judgment and costs; and sixty days after, there being no redemption from this sale, the sheriff made McLaughlin a deed for lot 2. At both the sales September 15, 1888, and the sale March 30, 1889, William H. Herdman notified the sheriff that he claimed a homestead in lot 2.

On the 29th day of March, 1889, appellant Rightnowar recovered another judgment against William H. Herdman for the sum of $48.55. The bill in this case was filed by Herdman and wife and Rightnowar, the Herdmans seeking to set aside the sale to McLaughlin on the ground that they had a homestead in lot 2, and also on account of irregularity in the sale of March 30, 1889, and asking that McLaughlin be decreed to complete the purchase at the execution sale of September 15, 1888, reserving to Rightnowar the right of redemption from such sale under his judgment of March 29, 1889.

The Circuit Court dismissed the bill, and the complainants seek to reverse this action of the court by this appeal.

Messrs. POLLOCK & POLLOCK, for appellants.

The Supreme Court has decided that a release of the homestead right as to one creditor does not operate as a release in favor of any other creditor. Raber v. Gund, 110 Ill. 581; Hume et al. v. Gosset, 43 Ill. 297; Kingman v. Higgins, 100 Ill. 319.

The evidence shows conclusively that ever since, in 1854, lots 2 and 3 were within the same inclosure, without anything to indicate a dividing line; that the principal part of the barn, with other improvements for the use of the family, were on lot 2, and the dwelling house, and some other improve-

ments, were on lot 3, and that both lots were occupied and used in common as their homestead. The fact is also shown (though not required in law) that Herdman notified the sheriff before the levy that lot 2 was claimed as homestead. It was 'then the duty of the sheriff to have summoned three householders to make appraisement, etc.; and not having done so (whether the claim of Herdman is sustained in law or not), the sale and all proceedings under it are absolutely void. Hartwell et al. v. McDonald, 69 Ill. 293; Newman v. Willetts, 78 Ill. 397; Muller v. Inderreiden, 79 Ill. 382; Moore v. Titman, 33 Ill. 358, 368, 369.

The homestead right can only be lost by release or abandonment in the mode pointed out by the statute. Moore v. Titman, 33 Ill. 358, 368.

Homestead can only be released in the statutory mode or by surrender or abandonment of possession to a purchaser under a conveyance. Kingman v. Higgins et al., 100 Ill. 319.

The husband can not defeat the homestead right of the wife. Allen v. Hawley, 66 Ill. 164.

The husband holds the homestead as trustee for the wife and children. Cassell v. Ross, 33 Ill. 244; Patterson v. Kreig, 29 Ill. 514; Best v. Allen, 30 Ill. 30; Boyd v. Cudderback, 31 Ill. 113; White v. Clark et al., 36 Ill. 285.

Since the act of 1857, the wife being vested with the homestead right by law, she can be deprived of it in no other way made than that prescribed by law—her release of the right. Booker v. Anderson, 35 Ill. 66, 87; Gage v. Wheeler et al., 129 Ill. 197.

In 1861, Sarah Dawson and husband conveyed to William H. Herdman her one-third interest in lot 3, and in 1862, Eliza J. Hinman and her husband conveyed her one-third interest in lot 3 to Mary A. Herdman.

But these conveyances could not divest or tend to divest the estate of homestead vested in Herdmans in 1854 and 1857. The homestead right in the wife and children can not be defeated by any *laches* of the husband and father. He is in law as to this right but a trustee. Hubbell v. Canady, 58 Ill. 425.

If he can not defeat the vested right of his wife and children, surely his creditors can not. The mere acquisition of these additional interests would not amount to either abandonment or release, in law.

On behalf of appellants, we contend that where the husband and father is the owner of property, which is adjacent to and occupied and used by the family as of their homestead, the right to hold such property can not be defeated, except by an abandonment or a conveyance in writing, duly executed and acknowledged, relinquishing the right.

In her separate property and earnings a wife is as independent of her husband as if she was a stranger to him. Thomas v. Mueller, 106 Ill. 36; Patten v. Patten, 75 Ill. 446.

The language of the statute is unmistakable that there shall be exempt from levy and forced sale the lot of ground and buildings thereon occupied as a residence and owned by the debtor, being a householder and having a family. The homestead right of the wife can not be divested except as provided by statute. Hill v. Bacon, 43 Ill. 477, 478; Brooks v. Hotchkiss, 4 Ill. App. 175; Johnston v. Dunavan, 17 Ill. App. 59; Ayres v. Hawkes et al., 1 Ill. App. 600; Richards v. Green, 73 Ill. 54.

Where the wife has a homestead right that she has not released, no order can be made by the court for the delivery of possession. Young v. Graff, 28 Ill. 20, 29.

It is against the policy of the law as well as against the terms of the homestead act to permit the husband to deprive the wife of her right of homestead; he can make no stipulation that can deprive her of such right. Thompson on Homesteads, 172.

Where the residence of the debtor is upon one lot of land and the other farm buildings on another lot, contiguous, the debtor is entitled to a homestead in that portion of his farm on which his buildings are. Darby v. Dixon, 4 Ill. App. 187; Reinback v. Walter, 27 Ill. 393.

The homestead may consist of several adjoining tracts in one inclosure. Thornton v. Boyden, 31 Ill. 200.

It is a question of fact whether adjoining and contiguous

tracts of land forming one body are or are not parcel of the homestead.   Walters v. The People, 18 Ill. 198.

But by whom must this fact be settled?   The statute provides a mode, and that is by the sheriff calling upon three householders, and they are authorized to settle it; the law has not provided any other mode, and in failing to do so, the sheriff disregarded his duty.

For the reasons already stated, we contend that the estate of homestead can not be limited to property held in common or in joint tenancy by husband and wife.   We contend further that the estate can only be supported in property held in severalty.   The question has not been settled in this State.

It may be contended that this question was considered and settled by this court in the case of William H. Herdman et al. v. Cooper et al., 29 Ill. App. 589.   The honorable judge, in delivering the opinion in that case, stated that a hasty examination of the authorities discloses that certain States held the affirmative and others the contrary rule, etc.   The decision in that case rested upon another question, and the language of the court we think does not settle this question, and therefore we take the liberty of presenting the question for the consideration of this honorable court.   Exemption laws being remedial, beneficial and humane, must be liberally construed, and whenever it does not c'early appear whether the property is embraced within the exemption statute, the debtor should be allowed the benefit of the doubt.   Freeman on Executions, 208, 209.   Thompson on Homestead Exemptions, at page 181, professes to give the States in favor of and against the proposition.   This affords but very unreliable grounds for an opinion, because he fails to give the constitutional provisions under which these decisions were made.   But considering them as given, we think the weight of authority is against the proposition.   Our statute is plain and unambiguous that every householder shall be entitled to an estate of homestead in the farm or lot of land owned or rightly possessed, etc., not where he is the owner or rightly possessed in common; but it can mean nothing else than separate ownership.   If the Legislature had intended to

invade the rights of a co-tenant, surely they would have made some provision by which the right of third parties might be preserved, and we respectfully urge that to hold an estate in common, subject to the homestead, would be doing violence to the plain language of our statute, and invade the rights of the co-tenant. This honorable court will not hold, we think, in view of the statute, that Mary A. Herdman could not control her interest in lot 3. If she can, then the homestead is necessarily defeated. By allowing it to be occupied by the family in common with her husband's interests, did she surrender her right? We fail to find any rule by which this can be accomplished. The Supreme Court say that as to her separate property, she is as independent of the husband or his creditors as if she, were single. On this question we refer the court to the following cases: Wolf v. Fleshbocker, 5 Cal. 244; Bishop v. Hubbard, 23 Cal. 517; Camets v. Dupuy, 47 Cal. 79; Ward v. Huhin, 16 Minn. 159; West v. Ward, 26 Wis. 580; Dago v. Sutherland, 3 Mich. 218; Sunan v. Walker, 28 La. 608.

An officer may tender a deed or certificate of purchase, but the proper practice is, in case the purchaser refuses to comply with his purchase, to report the matter to the court and have the purchaser put under a rule to show cause why he should not complete his purchase. Herman on Executions, 254, 321 to 330.

In judicial sales, good faith must be observed by officer and purchaser. Meeker v. Evans, 25 Ill. 322.

Herdman had a right to effect a redemption. McCormick v. Wheeler, 36 Ill. 533.

Where land is sold under execution, and the debtor fails to redeem within twelve months and confesses a judgment in favor of another creditor for the express purpose of enabling such judgment creditor to redeem for the debtor, it is not fraudulent. Phillips v. Demoss, 14 Ill. 410; Karnes v. Lloyd, 52 Ill. 113.

A judgment debtor may procure another to redeem for him after his right of redemption is lost. Pearson v. Pearson, N. E. R. (Ill.) 418.

Herdman v. Cooper.

So that the right of redemption from the sale of the 15th of September, 1888, rested with Herdman and Rightnowar.

As soon as the execution is deposited in the clerk's office the return becomes a matter of record, and is beyond the reach of the officer. Nelson et al. v. Cook, 19 Ill. 455.

Here the sheriff made return that he had sold the lot to the execution creditor, and that satisfied the execution as to that lot until the court, for cause shown, should see proper to set it aside, which has not been done, and hence the sale of the 30th of March, 1889, was and is void. Hughes v. Streeter, 24 Ill. 649.

Where the plaintiff in execution becomes the purchaser, if no undue advantage is taken of him, he is bound by his bid. Vanscoyce v. Kimler, 77 Ill. 151; Farmers Bank v. Sperling, 113 Ill. 273.

Mr. GEORGE B. LEONARD, for appellees.

Appellants claim that McLaughlin should have completed the attempted sale of this lot on September 15, 1888, and upon his refusal to pay the amount of his bid and receive a certificate of purchase at that time, that all right of the sheriff, Cooper, was lost (especially after he had returned this execution), to again offer this lot for sale under° his levy of this process. This position is untenable for the reason that McLaughlin stood in the same relation to this attempted sale as would a stranger who may have then been the highest bidder, and refused to complete his purchase, that is, upon the property being offered again for sale by the officer, if it should not bring as much as this first bid. McLaughlin, upon a certain contingency, would be liable for the difference between his bid and the smaller sum for which it was finally sold, and the right of the sheriff to again offer this lot for sale can not fairly be questioned, and for authorities on the last points above, see Hill v. Hill, 58 Ill. 239; Thrifts v. Fritz, 101 Ill. 457; Maulding v. Steele, 105 Ill. 644, and cases therein cited.

It is also claimed by appellants that the officer, having returned his execution after attempting to sell this lot in September, 1888, therefore had no right to re-advertise

and sell this property under this levy. This position is also untenable. The levy having been made, the sale could be made at any time within seven years, although the execution may have been returned or even lost before sale. Breed v. Gorham, 108 Ill. 81; Hastings v. Bryant, 115 Ill. 69; Barth v. C. Nat'l Bank, 115 Ill. 472; Dobbins v. First Nat'l Bank, 112 Ill. 553; Holman v. Gill, 107 Ill. 467; Parks v. Larochhe, 15 Ill. App. 354; Conwell v. Watkins, 71 Ill. 488; Reddick v. Cloud, 2 Gilm. 670; Willoughby v. Dewey, 63 Ill. 246; Phillips v. Dana, 3 Scam. 551.

This family can not have two homesteads. Tourville v. Pierson, 39 Ill. 446; Raber v. Gund, 110 Ill. 581.

And this right of homestead extends to every interest in lands that may be taken on execution. Shackleford v. Tod-hunter, 4 Ill. App. 271; Blue v. Blue, 38 Ill. 9; Conklin v. Foster, 57 Ill. 104; Tomlin v. Hillyard, 43 Ill. 300; Watson v. Saxer, 102 Ill. 585; Boyd v. Cudderback, 31 Ill. 13.

The homestead being in lot 3 this levy and sale was right, although both lots were under the same inclosure. Hay v. Baugh, 77 Ill. 500; Raben v. Gund, above cited in 110 Ill. 581.

In the case of Hay v. Baugh, which is like this one, the court said : "We can see no pretense for holding lot 2 exempt from levy and sale; to so hold would not be to construe the statute but to override and disregard it;" and nothing is found in this objection.

It is claimed by counsel for appellants that we, with the creditor class, are endeavoring to narrow the debtor's rights to a homestead. This we deny, but follow the law, which has given the debtor, who is the head of a family, and residing with the same, a homestead in every character of title to the house and piece of land occupied and rightfully possessed by the householder. But the law does not give to nor have the courts ever held that this right of homestead would enable husband and wife to hold $2,000 worth of property in two adjoining pieces of property, free from the claims of both their creditors, as a homestead. On the contrary, the hold-ings of our courts have been to the reverse, by holding that this homestead right could be claimed by either husband or

Herdman v. Cooper.

wife in the property of the other thus occupied, thereby avoiding any necessity for a separate homestead in each of them. Attorneys for appellants claim that, as the statute of 1861 allows a wife to enjoy her property free from any claim whatever, as though she was unmarried, Herdman's right of homestead in this wife's land, or undivided two-thirds interest in lot 3, could not be claimed. We answer this by saying that there was no intention, in passing the married women's act of 1861, to cut off this right of homestead in the wife's land they may occupy as a homestead, nor did they intend thereby to increase the rights of a husband, thus situated, as against his creditors. However, our Supreme Court has repeatedly held that under this statute the husband has this homestead right in the land or lot of his wife thus occupied. Henson v. Moore, 104 Ill. 403; Sanford v. Finkle, 112 Ill. 146, above cited.

REEVES, J. We think it must be conceded, in the light of the decisions of the Supreme Court of this State, that a husband can have a homestead in his wife's property to the same extent as if the title to the property was in himself. He can have but one homestead. If that attaches to property owned by the wife he can not have another homestead in property the title to which is in himself. In this case, however, it is contended that lots 2 and 3, being in one inclosure, and both lots used in connection with the family, the homestead right or estate attached to both lots, even though the value of lot 3, upon which the residence was located, was more than $1,000. The case of Hay v. Baugh et al., 77 Ill. 500, would seem clearly to settle this question against appellants. In that case Hay owned lots 1 and 2 in a certain block, both in one inclosure. Lot 1, on which the residence was located, was shown to be worth more than $1,000. A levy was made, under an execution against Hay, on lot 2, and he set up the same claim as is made by appellants, but the court said: "Was lot 2 a part of his homestead within the meaning of statute? * * * The statute exempts the lot of ground upon which the debtor resides with his

family; not the inclosure, homestead or farm. In this case Hay resided on lot 1, which was worth more than $1,000 and it was his homestead; citing Reinbach v. Walters, 27 Ill. 393; Tourville v. Pierson, 39 Ill. 447; Hill v. Bacon, 43 Ill. 477; Hubbel v. Canady, 58 Ill. 425. Lots 1 and 2 are separate tracts of ground and are distinct legal subdivisions under the town plat, as much so as are two different quarter sections of land. We can, in this case, see no pretense for holding lot 2 was exempt from levy and sale. To so hold would not be to construe the statute, but to override and disregard it."

Where two lots are in one inclosure, the dwelling house on one and the other used in connection with the dwelling for the use of the family, and the one on which the dwelling is situated is not worth $1,000, there would be good reason for saying that the homestead right attached to both lots; but when the lot on which the dwelling is situated, is worth more than $1,000, there is no more reason for saying that the homestead attaches to the adjoining lot in the same inclosure, than there would be for saying that the homestead right would attach to a section of land in one inclosure, where the dwelling house was located on one forty-acre tract of the section. Now, taking the facts of this case under this view of the law, it would seem to follow, as a necessary conclusion, that the homestead right of Herdman is confined to lot 3; and if we should concede that the condition of the title to lot 3 was not such as would support a homestead, we fail to see how such a right could attach to lot 2. The dwelling house, which is the foundation fact upon which the homestead must stand, does not stand upon any part of lot 2. Hence we do not find it necessary to decide the question whether the homestead can be maintained when the title to premises is held in common.

It is also claimed that when McLaughlin bid off lot 2 at the sale under his execution, September 15, 1888, the sale was complete so far as McLaughlin was concerned. This seems to us to be a misapprehension. The sale was not complete until the money was paid to the sheriff, and under the facts shown

we think it was clearly the duty of the sheriff to re-advertise the property for sale, and his return of the execution to the office of the clerk did not relieve him from this duty. He had made a levy of the execution on lot 2 in the lifetime of the execution; it was his duty to hold the execution until he had disposed of the levy by a sale.

The return made by the sheriff on the execution after the sale of September 15, 1888, shows that it was not completed; that the purchaser refused to complete it. Bellingall v. Duncan et al., 3 Gilm. 477. The most that could result in such a case would be to make the purchaser, if on a re-sale the property did not bring as much as at first sale, responsible for the difference. In this case the property brought more than double the amount it did at the first sale.

Finding no error in the action of the Circuit Court in dismissing the bill of appellant, the same is affirmed.

*Decree affirmed.*